[No. 5173.]
[No. 2776 C. A.]

RANKIN V. CARDILLO.

1. Appellate Practice—Verdict—Conclusiveness.

Where the verdict is supported by the testimony, it cannot be disturbed even though the appellate court might consider that the jury had arrived at a wrong conclusion; but, although the verdict may have some testimony to support it, if, in view of the whole evidence, it is palpably unwarranted, the verdict should

be set aside; and a judgment which is but slightly supported by the evidence and is manifestly against the weight thereof, cannot be permitted to stand.—P. 217.

2. **Brokers—Sale of Real Estate—Commission—Evidence Insufficient to Support Verdict.**

In an action for commission for procuring a purchaser of real estate, evidence examined and held insufficient to support the verdict for the broker.—P. 220.

3. **Nonsuit—Directing Verdict—Setting Verdict Aside—New Trial.**

Where a verdict for plaintiff would be manifestly against the weight of the testimony, the trial court should grant a motion for nonsuit, or direct a verdict for defendant; and, failing to do either, the verdict should be set aside.—P. 221.

*Appeal from the District Court of Arapahoe County. Hon. P. L. Palmer, Judge.*

Action by Angelo Cardillo against David A. Rankin. From a judgment for plaintiff, defendant appeals.                                     *Reversed.*

Messrs. WHITFORD & MAY, for appellant.

Mr. JOHN RUSH, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was an action brought by appellee in the district court to recover one hundred dollars alleged to be due him for commissions upon the sale of certain real estate belonging to appellant. The defendant contended that he did not employ plaintiff, and that the property was not sold by virtue of the agency of plaintiff. The jury rendered a verdict for plaintiff, and defendant appeals.

The only question in the record is as to whether or not the verdict was supported by the testimony. If the verdict is supported by the testimony, it cannot be disturbed by this court even though we should consider that the jury had arrived at a wrong conclusion; but, although the verdict may have some

testimony to support it, if in view of the whole evidence it is palpably unwarranted, the verdict should be set aside. A judgment which is but slightly supported by the evidence and manifestly against the weight thereof, cannot be permitted to stand.—*Lawrence v. Weir*, 3 Colo. App. 401; *Wachsmuth v. Heil*, 1 Colo. App. 196; *Brinker v. Ry. Co.*, 11 Colo. App. 166; *Solomon v. Webster*, 4 Colo. 353; *Mitchell v. Reed*, 16 Colo. 109; *Nix v. Bank*, 23 Colo. 511.

The plaintiff testified that defendant employed him to sell a ten-acre piece of ground for $2,000.00, and agreed to give him one hundred dollars commission. Defendant denied this, but says that he informed the plaintiff that he would sell the land for $1,900.00 cash. One other witness was called by plaintiff, who testified that he heard a conversation between plaintiff and defendant in which the defendant said that if the land was sold by plaintiff for $2,-000.00, that would mean $100.00 for plaintiff and $1,-900.00 for defendant. This conversation may have occurred and the statement of defendant nevertheless be true. However that may be, we are not inclined to disturb the verdict upon this ground.

The plaintiff further testified that one John Marring informed him that he (Marring) wanted a piece of land, and that as soon as his work was done he would go and see the plaintiff; that plaintiff saw Fred Marring and told him that if he (Fred) would sell John Marring the ten-acre piece of land lying east of Fred's ground and the tract owned by plaintiff, that he would make it right with Fred because he would get a commission on the sale; that Fred informed the plaintiff that he was not aware that John wanted to buy a piece of land. The plaintiff urged him to see John, and the land was sold by defendant to John Marring, and afterwards plaintiff demanded his commission. Defendant refused to

pay it on the ground that plaintiff had never spoken to Marring about the land. Subsequently, in a conversation between plaintiff and defendant and John Marring, Marring said: "Yes, I told Mr. Rankin that if any commission got to be paid, it has got to be paid to you."

Plaintiff further stated that he first spoke to Marring concerning the sale of the land a little more than a year before the suit. The trial occurred in March, and according to the testimony of the plaintiff, the conversation in which the land was put into his hands for sale occurred in June previous, about nine months before the suit. Plaintiff testified that he spoke to Marring about several pieces of land and showed him a map; that he never took Marring out to this particular piece of land. This is the substance of the testimony of plaintiff as shown by the abstract.

The plaintiff also called John Marring as a witness upon his own behalf. He testified that he never said anything to defendant about Cardillo nor about commissions; that there was no conversation between himself, Cardillo and Rankin about commissions; that Cardillo did speak to him about the purchase of some lands, but not about defendant's ten acres; that his brother never told him that Cardillo had spoken to him about the land; that he had never talked with Cardillo about the time he purchased the land; that his brother took him over to look at it; that plaintiff never took him in that neighborhood; that while he and his brother were looking at the land, Cardillo came over, but made no statement concerning commissions, did not claim that he was responsible for Marring's being there. This was all of the testimony introduced by the plaintiff.

The defendant testified that he saw Fred Marring and induced him to bring his brother over to

look at the land; that he brought his brother and introduced defendant and John Marring, and a sale was made.

Fred Marring testified that plaintiff never called his attention to defendant's land; that the first he learned of this land was when defendant spoke to him about it; that plaintiff never mentioned it to him at all; that plaintiff had a map and pointed out a piece of land on the map and said: "When you know of anybody that wants that piece of land, bring him over to me, I will make it all right with you." But that this was not defendant's land.

It is apparent from the reading of the testimony in this case that the sale was not made through the instrumentality of plaintiff, but that the land was sold solely through the efforts of defendant himself, aided by the brother of the purchaser. The facts in this case are not different in principle from the facts in the case of *Lawrence v. Weir, supra,* in which the court says: "Taking the case as made by plaintiff, alone, it will at once be seen that it did not comply with the requirements of the law, and when even that was destroyed by his own witness, Goudy, it is apparent that the court erred in refusing the motion for a nonsuit. The verdict of the jury was not only unwarranted by the evidence, but directly against it. There was no conflict in the legal acceptation of the term. The only conflict was between the plaintiff and his own witness, Goudy, whose evidence was destructive of his case."

And so here, so far as the sale of the land is concerned, the conflict in testimony is between the plaintiff and his own witness, John Marring, and defendant's witness, Fred Marring, who, plaintiff claims, was the go-between between plaintiff and the purchaser.

Where a verdict is so manifestly against the weight of testimony as it is in this case, it should be set aside. The district court should have granted the motion for a nonsuit. Having failed to do that, he should have instructed the jury to return a verdict for defendant; failing to do that, he should have set the verdict aside.

The judgment of the district court will be reversed.                                    *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.